IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LOREN CHRISTOPHER TARABOCHIA,                    CV. 07-471-MA

        Petitioner,                    OPINION AND ORDER

    v.

JEAN HILL,

        Respondent.


TONIA L. MORO
Assistant Federal Public Defender
15 Newtown Street
Medford, Oregon, 97501

    Attorney for Petitioner

JOHN KROGER
Attorney General
SUMMER R. GLEASON
Senior Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, Oregon 97301-4096

    Attorneys for Respondent


MARSH, Judge

    Petitioner, an inmate at the Snake River Correctional

Institution, brings this habeas corpus proceeding pursuant to 28

U.S.C. §2254.  For the reasons set forth below, the petition is denied, and this proceeding is dismissed, with prejudice.

<u>BACKGROUND</u>

In 2002, petitioner was indicted on 33 charges arising out of thefts from several businesses in Clatsop County.  After dismissing two attorneys, petitioner represented himself at trial.  On May 8, 2003, petitioner was convicted of multiple counts of Burglary in the Second Degree, Theft in the Third Degree, Criminal Mischief, Unauthorized Use of a Motor Vehicle, and Possession of Burglar's Tools.  Petitioner was sentenced to a 65-month term of imprisonment, to be followed by a 12-month term of post-prison supervision.

Petitioner filed a direct appeal, raising eleven assignments of error in a counseled brief, and an additional five assignments in a supplemental *pro se* brief.  The Oregon Court of Appeals affirmed, without opinion.  Petitioner filed a petition for review to the Oregon Supreme Court raising nine questions for review.  The Oregon Supreme Court denied review.  Petitioner did not seek state post-conviction relief.

Petitioner subsequently filed a *pro se* motion for correction of sentence which was denied by the trial court.  An appeal from that order was dismissed by the Oregon Court of Appeals on its own motion.

2 -- OPINION AND ORDER

In the instant proceeding, petitioner raises seven grounds for relief:  (1) unlawful search and seizure; (2) trial court's denial of motions for judgment of acquittal violated Due Process Clause; (3) unlawful departure sentences; (4) trial court's admission of evidence of other burglaries violated Fifth, Sixth and Fourteenth Amendments; (5) trial court's refusal to allow petitioner to present his theory of the case violated Sixth and Fourteenth Amendments; (6) petitioner's waiver of counsel was not knowing, voluntary, and intelligent; and (7) trial court erred in requiring petitioner to wear stunbelt.  In his supporting brief, petitioner addresses only ground for relief six.

**DISCUSSION**

I.  **Procedural Default.**

Respondent moves the court to deny habeas relief as to grounds for relief three through seven, and a portion of ground one, on the basis that petitioner procedurally defaulted his available state remedies.  I agree except as to ground six.

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief.  28 U.S.C. § 2254(b)(1); Smith v. Baldwin, 510 F.3d 1127, 1137-38 (9th Cir. 2007), cert. denied, 129 S.Ct. 37 (2008); Carter v. Giurbino, 385 F.3d 1194, 1196 (9th Cir. 2004), cert. denied, 543 U.S. 1190 (2005).

A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law. Baldwin v. Reese, 541 U.S. 27, 29 (2004); O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Casey v. Moore, 386 F.3d 896, 916 (9th Cir. 2004), cert. denied, 545 U.S. 1146 (2005). A "fair" presentation requires that the prisoner present both the operative facts and the legal theory on which the claim is based so as to adequately alert the state courts to the federal nature of the claim. Castillo v. McFadden, 399 F.3d 993, 999 (9th Cir.), cert. denied, 546 U.S. 818 (2005). A claim is not fairly presented if it is raised in a procedural context in which its merits will not be considered. Castille v. Peoples, 489 U.S. 346, 351 (1989).

If a state prisoner procedurally defaults his federal claims in state court, federal habeas relief is precluded absent a showing of cause and prejudice, or that failure to consider his federal claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991); Smith, 510 F.3d at 1139.

**A.  Grounds for Relief 1(c), 1(d), and 3-5.**

In grounds for relief one (subsections (c) & (d)), three, four, and five, petitioner raises suppression, evidentiary, and sentencing issues. Each of these grounds was procedurally defaulted due to petitioner's failure to raise them in his petition for review to the Oregon Supreme Court. Petitioner raises no

argument to the contrary, nor has he made a showing sufficient to excuse the procedural default.   Accordingly, habeas relief is precluded as to these grounds for relief.

**B.   Ground for Relief 6.**

In ground for relief six, petitioner alleges that the trial court's finding that his waiver of the right to counsel was knowing, voluntary, and intelligent, was erroneous because "the district attorney in the case actively obstructed the petitioner's access to the law library and materials." Respondent argues that this ground was not fairly presented to the Oregon Court of Appeals and Supreme Court because petitioner did not preserve it in the trial court, or show that the claim should be reviewed on appeal. I disagree.

In State v. Cole, 323 Or. 30, 36, 912 P.2d 907 (1996), the Oregon Supreme Court held that the issue of whether a criminal defendant knowingly and voluntarily waived counsel need not be preserved in the trial court to be raised on appeal.  The Court explained that "[a] defendant whose waiver of counsel is accepted without first being apprised of the risks of self-representation cannot be expected to object to acceptance of that waiver on the ground that he or she was not apprised of those risks." Cole, 323 Or. at 36.  Accordingly, I consider the merits of this ground for relief infra.

///

**C.   Ground for Relief 7.**

In ground for relief seven, petitioner challenges the use of a stunbelt at trial.  Petitioner did not *fairly* present this ground for relief to the Oregon Court of Appeals and Supreme Court because it was presented in a procedural context in which it would not be considered, i.e., it was not preserved for appeal.  Moreover, it was not an error apparent on the face of the record.  <u>See</u> Or. R. App. P. 5.45 (with the exception of errors apparent on the face of the record, no matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court).  Accordingly, ground seven is procedurally defaulted.  Because petitioner offers no basis to excuse his procedural default, habeas relief is precluded as to this ground for relief.

**II.  <u>The Merits</u>.**

**A.   Ground for Relief 1.**

In his first ground for relief, petitioner raises several issues in support of his challenge to the constitutionality of the search warrant of his residence.  It is well settled that a Fourth Amendment claim is not cognizable in a federal habeas corpus proceeding if the prisoner had a full and fair opportunity to litigate the claim in state court.  <u>Stone v. Powell</u>, 428 U.S. 465, 494-95 (1976).  The relevant inquire under <u>Stone</u> is whether the prisoner had the opportunity to litigate his claim, not whether the

claim was correctly decided.  <u>Ortiz-Sandoval v. Gomez</u>, 81 F.3d 891, 899 (1996).

Petitioner fails to address this claim in his briefing and, consequently has made no showing that he was denied a full and fair opportunity to litigate this claim.  <u>See</u> <u>Woolery v. Arave</u>, 8 F.3d 1325, 1326-27 (9th Cir. 1993), <u>cert. denied</u>, 511 U.S. 1057 (1994) (petitioner bears burden of demonstrating that the state courts did not provide him with a full and fair hearing).  Moreover, an independent review of the state record[1] reveals that petitioner took advantage of his opportunity to fully litigate this issue in state court.  <u>See</u> Tr., Part B, January 28, 2003 hearing. Accordingly, habeas relief is not warranted as to ground for relief one.

### B.  Ground for Relief 2.

In counts 1, 2, and 4 of the indictment, petitioner was charged with burglarizing a business located at 37573 Old Highway 30, Astoria.  Resp. Exh. 102 at 2-3.  Petitioner alleges that the trial court violated his right to due process, by denying judgments of acquittal on counts 1, 2, and 4 because the state's proof at trial was that the offenses occurred at a different address (Route 5, Hanger 3).  Resp. Exh. 103 at 38; Tr. 569-575.

---

[1] <u>See</u> <u>Delgado v. Lewis</u>, 223 F.3d 976, 981-82 (9th Cir. 2000) (requiring independent review of the record by federal habeas corpus court when there is no reasoned state court opinion to review).

"The Sixth Amendment guarantees a criminal defendant the fundamental right to be informed of the nature and cause of the charges made against him so as to permit adequate preparation of a defense. Guatt v. Lewis, 489 F.3d 993, 1002 (9th Cir. 2007), cert. denied, 128 S.Ct. 1477 (2008) (citing Cole v. Arkansas, 333 U.S. 196, 201 (1948)). However, an independent review of the record reveals that there is no factual support for petitioner's assertion that his due process rights were violated.

At trial, Jennifer Poulsen, the Manager of Washington North Tongue Point (the marine industrial facility referenced in counts 1, 2, and 4), explained that the address for the facility had changed to "Route 5, Hangar 3, in Clatsop County," but that the physical location of the facility was consistent with the address alleged in the indictment. Tr. at 34, 60-61, & 569-75. Ms. Poulsen explained that the facility shares its location with Tongue Point Job Corps Center, and that they once shared the same mailing address. Tr. at 60-62. Ms. Poulsen testified:

> [T]he facility was one – they built the unit in the late '30s to – for the Navy, and in the late – or early '60s they gave back – JFK's administration gave back to the states a certain amount of property that they had taken for use during the war, and they gave back that half of the facility. And in 2000, October of 2000, Washington Development Company bought that property from the State of Oregon. So now it's privately held, but it is half of that entire facility, which is one reason for the problems with the addressing system.

* * * * *

8 -- OPINION AND ORDER

> *** I can't say we were actually assigned the same
> address, but they were using the same address, and when
> I started receiving Job Corps' mail and they were getting
> my mail, I called the local postmaster and said, you
> know, "We have the same address."   And there isn't
> another one; that is it at this point.  They've gone back
> and forth with the City and with everything, and that's
> our address.

Tr. at 60-61.

Use of the physical location of the business, rather than its mailing address, if it was error, did not deprive petitioner of sufficient notice of the charges against him.  See Wilcox v. McCoy, 241 F.3d 1242, 1245 (9th Cir. 2001) (address not essential element of burglary under Oregon law).   Accordingly, the state court's rejection of this claim is neither contrary to, nor an unreasonable application of, clearly established federal law.   Federal habeas relief, therefore, is not warranted.

**C.    Ground for Relief 6.**

In ground for relief six, petitioner alleges that "[t]he trial court's finding that petitioner's waiver of his right to represent himself was knowing, voluntarily or intelligently made was erroneous, [because] the district attorney in the case actively obstructed the petitioner's access to the law library and materials in violation of the Petitioner's VI and XIV Amendment rights."

In his supporting memorandum, counsel argues that petitioner's constitutional rights were violated because the trial court failed to properly advise petitioner of the dangers of self-

9 -- OPINION AND ORDER

representation, and because petitioner's waiver of counsel was equivocal. In this regard, petitioner's counsel argues:

> The court did not warn him about the dangers of self-representation. It only discussed the possible sentence that could be imposed if he was convicted and told him the standards would not be reduced for him. It did not advise him that he would likely not know what evidence is admissible or the limitations of closing arguments, for example. These were two aspects of his trial in which he made mistakes. Moreover, neither did the court tell him that by waiving counsel he would forfeit the unlimited access to legal materials that counsel has. [Petitioner] was not advised that he would likely not obtain sufficient access to legal materials on his own.

Supporting Memo. at 12-13.

Respondent moves to deny habeas relief as to this ground on the basis that the trial court gave sufficient advice and warnings when it inquired five different times regarding petitioner's choice to proceed *pro se*. Based upon an independent review of the record, I conclude that the state court's rejection of this claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

In <u>Faretta v. California</u>, 422 U.S. 806 (1975), the Supreme Court articulated what the Sixth Amendment requires for a valid waiver of the right to counsel:

> When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must **"knowingly and intelligently"** forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in

order competently and intelligently to choose self-
representation, he should be made aware of the dangers
and disadvantages of self-representation, so that the
record will establish that **"he knows what he is doing and
his choice is made with eyes open."**

Id. at 835 (citations omitted, emphasis added); see also Iowa v.
Tovar, 541 U.S. 77, 87-88 (2004) (waiver of right to counsel must
be knowing, voluntary and intelligent).

"The information a defendant must possess in order to make an
intelligent election . . . will depend on a range of case-specific
factors, including the defendant's education or sophistication, the
complex or easily grasped nature of the charge, and the stage of
the proceedings." Iowa, 541 U.S. at 88. When a waiver is made at
the trial stage, the defendant must be warned specifically of the
dangers and disadvantages of self-representation. Id. (citing
Faretta, 422 U.S. at 835.)

Petitioner bears the burden of proving that his waiver of
counsel was not competent and intelligent. Id. at 92. "In
deciding whether a defendant has knowingly and intelligently
decided to represent himself, the trial court is to look not to the
quality of his representation, but rather to the quality of the
decision." Bribiesea v. Galaza, 215 F.3d 1015, 1020 (9th Cir.
2000).

At an initial appearance, petitioner indicated that he wished
to proceed pro se. After a "long talk", the trial judge convinced
petitioner to accept legal representation, and appointed Mary Ann

11 -- OPINION AND ORDER

Murk.  Tr. Vol. IV at 10-11.  Ms. Murk was allowed to withdraw
after petitioner became dissatisfied because counsel would not
raise certain issues, and because petitioner believed she was
"overburdened."  Id. at 11.  Petitioner explained to the trial
judge that his case was "pretty complex and it requires a lot of
research", and petitioner did not believe Ms. Murk had the time to
do it.  Id.

    The court next appointed Kristopher Kaino to represent
petitioner.  Id.  Approximately one month prior to trial, at a
pretrial hearing, petitioner expressed his dissatisfaction with Mr.
Kaino over plea negotiations, and due to difficulties contacting
him from the jail.  Id. at 3-4, 9 & 12-15.  The following exchange
ensued:

        THE COURT: Mr. Tarabochia, you told me originally
    you want[ed] to represent yourself.

        THE DEFENDANT: Correct.

        THE COURT: You've had two attorneys appointed and
    neither one of them lived up to your expectations, so
    what are you going to do about a lawyer for your January
    7 trial?

        THE DEFENDANT: I don't have an attorney and I'll ask
    to put in for a continuance.

        THE COURT: What are you going to do about an
    attorney?

        THE DEFENDANT: I don't have an attorney.

        THE COURT: What are you going to do about it?  Are
    you going to hire one?

THE DEFENDANT: I can't hire one; I have nothing. I have nothing.

THE COURT: Are you going to represent yourself?

THE DEFENDANT: I have to, yes.

THE COURT: You told me before you wanted to.

THE DEFENDANT: I did want to, yes.

THE COURT: Do you still want to?

THE DEFENDANT: I can; I don't see any reason why I can't.

THE COURT: You're an intelligent person, you seem to know the law fairly well, but you do have a very complicated case, but I'm to the point now where if you want to represent yourself, I will allow you to do so, because I don't think we're ever going to find a court-appointed counsel that you will be satisfied with.

THE DEFENDANT: It's not that. I want someone that's really going to fight for me, okay. I don't want somebody that wants to plea bargain, plea bargain, plea bargain, and that's all that people seem to want to do, you know. And I can see where he's coming from when you've got these threats of other charges that were supposed to be dismissed, okay, and that makes it hard. It's causing problems, the big conflict between the attorney-client in cases like this, you know, and it's a bad subject. I don't know – I don't have any bad feelings toward Mr. Kaino, I think he's a great attorney. He's just – it's causing problems between me and him.

THE COURT: You've got nine burglary counts pending.

THE DEFENDANT: Right.

* * * * *

THE COURT: But you understand that if the court were to send you to prison on the burglary charges, a judge could run those consecutive?

THE DEFENDANT: I know, ma'am, I know, if they have a conviction.

* * * * *

THE COURT: So you're looking at maybe 65 months in prison.  That's five 13-month consecutive sentences.

THE DEFENDANT: Right, I know.  The search and seizure issues have demurrable issues, we have –

* * * * *

THE COURT: *** I just want to make sure that the record is clear, Mr. Tarabochia, that your relationship with Mr. Kaino has broken down; yes?

THE DEFENDANT: Yeah.

THE COURT: You do not want him to represent you anymore; is that right?

THE DEFENDANT: That's correct.

THE COURT: And you're going to represent yourself; is that right?

THE DEFENDANT: Yes.

THE COURT: Do you want me to try to find another court-appointed attorney?

THE DEFENDANT: I have – I have one in Hillsboro that's really a good one.  I met him down in Tillamook.

THE COURT: Who represents you in Hillsboro?

THE DEFENDANT: A friend of mine, he represented a friend of mine down there, and I've got his number.

THE COURT: What's his name?

THE DEFENDANT: Oh, man.  I've got it written down on my discovery over there.

THE COURT: Well, let me know who he is.  But for now you're going to represent yourself; is that right?

THE DEFENDANT: Yeah, I'll try my best.

* * * * *

THE COURT: Let me just remind you that if you're going to represent yourself, you're going to be held to the same standard as an attorney as far as knowing the rules of the court and the law and the procedures, and you'll watch your language from now on.

THE DEFENDANT: Yeah.

Tr. Vol. IV at 15-29 & 31.

Immediately prior to trial, the trial judge again addressed the issue of petitioner proceeding *pro se*:

THE COURT: [A]lthough I can see some drawbacks to it, but Mr. Tarabochia, you did tell me several times in this case that you want to represent yourself, and I know and you know that I've appointed attorneys to represent you on two different occasions and you have been dissatisfied with each of them.

THE DEFENDANT: One didn't come see me for four months, or even send me a letter for four months. That's – I couldn't get anybody to fight for me.

THE COURT: You're – are you – do you still want to proceed representing yourself in this case?

THE DEFENDANT: Yeah. It's too late to do anything else, so yeah.

THE COURT: Would you do anything else even if you had more time?

THE DEFENDANT: No.

Tr. Vol. V at 347.

An independent review of the record reveals that petitioner's waiver of counsel was knowing, voluntary, intelligent, and unequivocal. At pretrial hearings, petitioner demonstrated a

15 -- OPINION AND ORDER

sophisticated understanding of the nature of the charges and the criminal proceedings. The trial judge explained the potential sentence petitioner faced if convicted of multiple counts of burglary. Although petitioner intimated prior to trial that his decision to proceed *pro se* was prompted by the fact that its "too late to do anything else", the trial court took time to ensure that petitioner unequivocally wished to proceed *pro se*, and that his decision was not dictated simply by the impeding trial. Tr. Vol. V at 347.

Moreover, although the trial judge did not "list bullet-style the various disadvantages of proceeding without counsel,"[2] in light of petitioner's understandings of the proceedings, the trial judge's admonition that petitioner would be held to the same standards of an attorney adequately communicated to this petitioner that he would be at a disadvantage proceeding *pro se* in the absence of a full understanding of the evidentiary and procedural rules followed by attorneys.

The fact that the trial court did not specifically advise petitioner that he would have better access to legal materials if represented by counsel does not render the decision involuntary or unknowing. See Lopez v. Thompson, 202 F.3d 1110, 1117 (9th Cir.), cert. denied, 531 U.S. 883 (2000) (neither the Constitution nor

_____

[2] Lopez v. Thompson, 202 F.3d 1110, 1118 (9th Cir.), cert. denied, 531 U.S. 883 (2000).

16 -- OPINION AND ORDER

*Faretta* compels a trial court to engage in a specific colloquy with the defendant); <u>see also</u> <u>Kane v. Garcia Espitia</u>, 546 U.S. 9, 10 (2005) (<u>Faretta</u> did not create clearly established federal right to library access for criminal defendant proceeding *pro se*). Moreover, petitioner's inability to understand the intricacies of the hearsay rule, or other rules of evidence, does not undermine this court's assessment that he voluntarily and knowingly waived his right to assistance of counsel. <u>See</u> <u>Faretta</u>, 422 U.S. at 836 (the defendant's technical legal knowledge not relevant to assessment of whether he knowingly exercised right to defend himself); <u>Bribiesca</u>, 215 F.3d at 1020 (court must evaluate quality of the decision to proceed *pro se*, not the quality of the representation).

In sum, I conclude that the state court's rejection of petitioner's Sixth Amendment claim is neither contrary to, nor an unreasonable application of clearly established federal law. Accordingly, habeas relief is not warranted.

///

///

///

///

///

///

17 -- OPINION AND ORDER

## <u>CONCLUSION</u>

Based on the foregoing, petitioner's petition for writ of habeas corpus (#2) is DENIED, and this proceeding is DISMISSED, with prejudice.

IT IS SO ORDERED.

DATED this 24__ day of August, 2009.


_/s/  Malcolm F. Marsh_____
Malcolm F. Marsh
United States District Judge